# IN THE COURT OF APPEALS OF IOWA

No. 25-0587
Filed July 2, 2025

**IN THE INTEREST OF H.D., A.D., E.D., and A.D.,
Minor Children,**

**C.D., Father,**
     Appellant.

_____

Appeal from the Iowa District Court for Plymouth County, Jessica Noll, Judge.

A father appeals the termination of his parental rights to four children. **AFFIRMED.**

Jamie L. Hunter of Dickey, Campbell & Sahag Law Firm, PLC, Des Moines, for appellant father.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Maxine M. Buckmeier of Maxine M. Buckmeier P.C., Sioux City, attorney and guardian ad litem for minor children.

Considered without oral argument by Tabor, C.J., and Ahlers and Langholz, JJ.

**LANGHOLZ, Judge.**

A father was convicted of second-degree sexual abuse and incest after raping and impregnating his then-thirteen-year-old daughter. He is currently serving consecutive prison sentences totaling thirty years, with a lengthy mandatory minimum term. After DNA testing confirmed his sexual abuse, all four of his children were removed from his custody and the juvenile court later terminated his parental rights. The father now appeals, asserting that the Iowa Department of Health and Human Services ("HHS") did not provide active efforts under the Iowa Indian Child Welfare Act, termination is not in the children's best interests, and a permissive exception should preclude termination.

Because the father waited until the termination hearing to object to HHS's active efforts, he has failed to preserve error. As for the children's best interests, none of the children are safe in the father's care. The father refuses to acknowledge the abuse and harm he caused to all his children, even the oldest daughter. And in their mother's custody, the children are back in school, developing well, and enjoying a safe and secure home environment. So the children are best served by termination, and no permissive exception is appropriate. We thus affirm termination of the father's parental rights.

## I.      Factual Background and Proceedings

The father[1] has four children—two daughters and two sons. He and the children are members of the Navajo Nation. The father and mother divorced in

---

[1] We avoid using the parties' names to respect their privacy because this opinion—unlike the juvenile court's order—is public. *Compare* Iowa Code § 232.147(2) (2025), *with id.* §§ 602.4301(2), 602.5110; *see also* Iowa Ct. R. 21.25.

2020, and the dissolution decree gave the father sole legal custody and physical care of the children after the mother defaulted. This custody arrangement was imposed despite a 2018 founded child-abuse assessment, where HHS determined the father physically abused the mother in the children's presence.

In 2023, the oldest daughter became pregnant—she was thirteen years old. The father did not arrange for her to receive any prenatal care until she was twenty-three weeks pregnant. Five weeks later, the baby died in utero and the daughter had to endure being induced and delivering the deceased baby. DNA testing performed after delivery confirmed the father had impregnated the oldest daughter.

All four children were promptly removed from their father's custody and placed with their mother. And they were later adjudicated in need of assistance under Iowa Code section 232.96A(3)(b) and (4) (2023). A no-contact order was also issued barring contact between the father and children. Despite this order, the father continued to seek out the oldest daughter, once sending her over fifty text messages in a single day. Because the father refused to acknowledge abusing his daughter and repeatedly violated the no-contact order, the juvenile court initially waived HHS's reasonable-efforts requirements. But the court later clarified that because the Iowa Indian Child Welfare Act applied, HHS must provide "active efforts" toward reunification. *See* Iowa Code § 232B.5(19).

Out of their father's custody, the other three children also started revealing signs of past mistreatment. The older son said he enjoyed living with his mother, as he "doesn't fear being abused like he did when they were with dad." The younger son reported being "thrown to the floor and kicked" by the father. And the younger daughter could draw detailed pictures of adults engaging in sex.

Meanwhile, the father was criminally charged with second-degree sexual abuse and incest. A jury convicted him of both counts in October 2024. He was sentenced to two consecutive prison terms totaling thirty years, with a mandatory minimum of seventeen-and-a-half years.

After the father's convictions, the State petitioned to terminate the father's parental rights to all four children. The matter proceeded to a hearing, where a social worker from the Navajo Nation testified as a qualified expert witness. *See* Iowa Code § 232B.10(2). Following the hearing, the juvenile court terminated the father's parental rights to the children under paragraphs "d," "e," "f," "i," "j," "m," and "o" of Iowa Code section 232.116(1). The father now appeals.

## II. Active Efforts

The father first argues HHS failed to provide active efforts toward reunification under the Iowa Indian Child Welfare Act. *See id.* § 232B.5(19) (requiring "active efforts" prior to terminating the "parental rights over an Indian child" and that such efforts involve "a vigorous and concerted level of casework beyond the level that typically constitutes reasonable efforts").

But the father never objected to HHS's efforts until the termination hearing. In the analogous context of reasonable efforts, "if a parent fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding." *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002); *see also In re J.B.D.*, 584 N.W.2d 577, 581 (Iowa Ct. App. 1998) (holding that the federal Indian Child Welfare Act, which has an identical active-efforts requirement, does not override "a state's error preservation rules"). Requiring parents to object "early in the process" allows the juvenile court to make necessary

changes or direct HHS to provide certain services. *In re L.M.*, 904 N.W.2d 835, 840 (Iowa 2017) (cleaned up). Here, the father argued that HHS should have moved to modify the no-contact order so he could see his children. But the no-contact order was imposed over a year before the termination trial. His objection thus comes far too late, precluding appellate review. *See id.*

### III.     Children's Best Interests

The father also disputes that termination best serves the children.[2] To guide our best-interests analysis, we consider the children's safety, as well as their "physical, mental, and emotional condition[s] and needs." Iowa Code § 232.116(2). And we review the juvenile court's ruling de novo, giving due weight to the court's fact-finding and credibility determinations. *In re W.T.*, 967 N.W.2d 315, 322 (Iowa 2021).

The children's safety is best served by terminating the father's parental rights. Even now, after being convicted of sexual abuse and incest and DNA analysis confirming he impregnated the oldest daughter, the father refuses to accept responsibility or acknowledge the harm he caused her. Indeed, he went so far as to blame the older son—who was eleven years old at the time—for abusing the oldest daughter. And a social worker with the Navajo Nation Indian Child Welfare Act program agreed that "continued custody of the children by [the father] would likely result in serious emotional or physical damage to the children."

---

[2] Although we normally follow a three-step termination framework, when a parent does not contest one or more steps on appeal, we need not address them. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

The children are all doing well in their mother's custody. While with their father, the children were pulled out of public school and provided little homeschooling, despite one of the children having an IEP. The mother has returned them all to school and the children are performing well in their classes. She has also ensured they are in therapy, which has produced significant changes in their behaviors and demeanors. Because termination would ensure the children continue to grow in a safe and stable home environment, we find termination is in the children's best interests.

## IV.  Permissive Exception

Finally, the father urges us to apply the permissive exception to termination under Iowa Code section 232.116(3)(a) (giving discretion to forgo termination if a relative has legal custody of the children). The father has the burden to prove this exception by clear and convincing evidence. *W.T.*, 967 N.W.2d at 322. And when weighing this exception, we are mindful that the children's "best interests always remain the first consideration." *In re C.K.*, 558 N.W.2d 170, 174 (Iowa 1997).

Although the children were in their mother's custody at the time of the termination hearing, the juvenile court declined to apply this exception. And we agree. The children all deserve a childhood with a parent who is present and puts their needs first. Beyond the father's neglect and abuse, he will be incarcerated for another seventeen years. Placing the children's safety and well-being at the forefront, termination provides them with long overdue security and permanency. Thus, we affirm termination of the father's parental rights.

**AFFIRMED.**